# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

———————————————————————

KRISTI L. KAUFMANN (HORN),　　　　　CV 09-51-M-JCL

　　　　　　Plaintiff,

　　vs.

　　　　　　　　　　　　　　　　　　ORDER

GEICO GENERAL INSURANCE
COMPANY,

　　　　　　Defendant.

———————————————————————

　　　　This insurance dispute comes before the Court on the parties' cross-motions for summary judgment regarding Plaintiff Kristi Kaufmann's ("Kaufmann") claim for underinsured motorist ("UIM") coverage under an automobile insurance policy issued by Defendant Geico General Insurance Company ("Geico").  In addition, Geico has unilaterally moved for summary judgment on Kaufman's remaining claims for failure to provide or procure insurance and misrepresentation.  For the reasons set forth below, Geico's motion for summary judgment is granted in its entirety and Kaufmann's cross-motion for partial summary judgment is denied.

## I.  Background[1]

———————————

[1] The following facts are undisputed.

Kaufmann was injured in a single vehicle accident that took place on October 6, 2005.  Kaufmann's husband, Daryl Kaufmann, was driving their 2002 Ford Explorer when the accident occurred, and Kaufmann and her daughter, Ashley Costa, were passengers.

At the time of the accident, Kaufmann and her husband were the named insureds on an automobile insurance policy issued by Geico.  Dkt. 24-1, at 17. The Geico policy insured two vehicles, including the 2002 Ford Explorer involved in the accident, and provided liability insurance coverage with per person limits of $300,000 and per occurrence limits of $300,000.  Dkt. 24-1, at 2.  The policy also provided for UIM coverage in the same amounts.  Dkt. 24-1, at 2.

In March 2007, Kaufmann and her daughter filed suit against Daryl Kaufmann in state court, alleging that his negligent driving caused the accident and their resulting injuries.[2]   Dkt. 5.   Approximately one year later, Kaufmann amended her complaint to add Geico as a defendant and assert a claim for declaratory judgment regarding the availability of UIM benefits under the policy. Dkt. 1-3.  In December 2008, Kaufmann released her husband in consideration for

---

  [2] Although Ashley Costa initially joined her mother as a plaintiff, she later moved to dismiss her claims without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).  The Court granted her motion on June 19, 2009, leaving Kaufmann as the sole remaining plaintiff.

payment of the policy liability limits of $300,000.  Dkt. 44.  Alleging damages in

excess of the policy's liability limits, Kaufmann thereafter amended her complaint

against Geico for a second time.  Dkt. 1-1, 44.

This Second Amended Complaint alleges five claims against Geico,[3]

denominated by Kaufmann as follows: (1) claim for underinsurance; (2) breach of

contract of Geico as agent; (3) failure to provide insurance by agent; (4) negligent

failure of agent to procure insurance, and; (5) misrepresentation.  Dkt. 44.  With

Daryl Kaufmann no longer a defendant, Geico removed the case to this Court

based on diversity jurisdiction in April 2009.  Dkt. 1.

Geico has since moved for summary judgment on all of Kaufmann's claims,

and Kaufmann has cross-moved for summary judgment on her claim for UIM

benefits under the policy.

## II.  Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary

judgment "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

---

[3] The Second Amended Complaint also names Ashley Costa as a plaintiff and includes two claims for relief against  Daryl Kaufmann.  As noted above, however, these individuals are no longer parties to this action.  This leaves Kaufmann's five claims against Geico as the only ones that remain.

movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).  And where the nonmoving party bears the burden of proof at trial, the moving party may satisfy its initial burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims. *Celotox*, 47 U.S. at 325.

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories of admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S.  317, 324 (1986).  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings...." *Anderson*, at 248.

-4-

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## III.  Discussion

As Kaufmann explains it, her lawsuit is based on two alternative theories of recovery. First, she claims that because her damages exceed the limits of her husband's liability coverage, she is entitled to UIM coverage under the terms of the Geico policy. In the event the Court disagrees, Kaufmann seeks in the alternative to recover for misrepresentations she claims Geico made in the course of selling her the policy.

The parties have cross-moved for summary judgment on Kaufmann's threshold claim for coverage. Accordingly, the Court turns first to the question of whether Kaufmann is entitled to UIM benefits under the terms of the Geico policy.

## A.    Underinsurance Coverage

It is well-established in Montana that "[t]he interpretation of an insurance contract presents a question of law."[4]  *Moodroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, ¶ 24 (Mont. 2008).  The Court must interpret the terms of the "insurance policy according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, ¶ 16 (Mont. 2008) (quoting *Stutzman v. Safeco Ins. Co. of America*, 945 P.2d 32, 34 (Mont. 1997).  In doing so, the Court "may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit." *Allstate Ins. Co.*, at ¶ 16.

If the terms of an insurance policy are ambiguous, however, that ambiguity must be strictly construed against the insurer. *Stutzman*, 945 P.2d at 34.  "An '[a]mbiguity exists only when the contract taken as a whole or in its wording or phraseology is reasonably subject to two difference interpretations.'" *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, ¶ 25 (Mont. 1998).  Regardless of whether they are ambiguous, exclusions from coverage will be narrowly and

---

[4] Sitting in diversity jurisdiction, this Court looks to the substantive law of Montana as the forum state for purposes of the ensuing analysis.  *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

strictly construed against the insurer "because they are contrary to the fundamental protective purpose of an insurance policy." *Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, ¶ 46 (Mont. 2009). *See also Stutzman*, 945 P.2d at 36.

It is with these principles in mind that the Court considers the Geico policy at issue here and the applicability of its UIM coverage provisions. Those UIM coverage provisions are incorporated within the policy's uninsured motorist ("UM") coverage section, and state that Geico "will pay damages for bodily injury caused by an accident which the insured is legally entitled to recover from the owner of an uninsured auto." Dkt. 24-1, at 12. Because the policy provides that an uninsured auto "also includes an underinsured auto," this means that Geico will likewise pay damages an insured is legally entitled to recover from the owner of an "underinsured auto" as defined by the policy. Dkt. 24-1, at 12.

Citing that definition, Geico argues that the policy plainly precludes Kaufmann from recovering UIM benefits because the insured auto in which she was riding at the time of the accident cannot also qualify as an underinsured auto. Geico is correct.

The Geico policy defines an underinsured auto, in pertinent part, as follows:

"***Underinsured auto***" means a motor vehicle with respect to which the sum

of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the limits of liability under this coverage.

The term "*underinsured auto*" does not include any vehicle or equipment:
    (a) which is an *insured auto* ....

Dkt. 24-1, at 12.

The effect of this exclusionary language is that a single vehicle cannot be both an insured auto and an underinsured auto.  An "insured auto" is one "described in the declarations and covered by the bodily injury liability coverage of this policy...."  Dkt. 24-1 at 12.  It is undisputed that the 2002 Ford Explorer in which Kaufmann was riding at the time of the accident was described on the declarations page and covered by the policy's bodily injury liability provisions. Dkt. 24-1, at 2.  Indeed, Kaufmann released her husband as a defendant in consideration for payment of the policy's $300,000 bodily injury liability limit. Because the vehicle involved in the accident was an "insured auto," it is specifically excluded from the definition of an "underinsured auto."

There is nothing ambiguous about the definition of "underinsured auto" or its exclusionary language.  A reasonable consumer of insurance would, on reading that definition, conclude that an insured auto cannot also be considered an underinsured auto for which UIM benefits might be recoverable.

Invoking the principle that exclusions from coverage are to be strictly construed against the insurer regardless of whether or not they are ambiguous, Kaufmann takes the novel position that the vehicle involved in the accident, which is listed on the policy's declarations page, is not in fact an "insured auto."  In doing so, Kaufmann focuses not on the definition of "underinsured auto," but instead on the definition of "insured auto" and its exclusionary language.

To properly understand Kaufmann's argument, it is necessary to examine the policy's definition of "insured auto" in its entirety.  That definition reads as follows:

> *"Insured auto"* is an auto:
>
> (a)   described in the declarations and covered by the bodily injury liability coverage of this policy;
> (b)   temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
> (c)   operated by *you* or *your* spouse if a resident of the same household.
>
> But the term *"insured auto"* does not include:
>
> (I)   an auto used to carry passengers or goods for hire, except in a car pool;
> (ii)   an auto being used without the owners's permission; or
> (iii)   under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.
>
> Dkt. 24-1, at 12.

According to Kaufmann, the 2002 Ford Explorer falls under subsection (c) because it was being operated by her spouse at the time of the accident, which would make it an "insured auto."  But because she and her husband owned the vehicle, Kaufmann maintains subsection (iii) in turn removes it from the definition of an "insured auto."  From there, Kaufmann returns to the definition of an "underinsured auto," and argues that because the 2002 Ford Explorer was not an "insured auto," the "insured auto" exclusion does not apply and the vehicle is properly classified as an "underinsured auto."  Although this logic is dubious, Kaufmann claims she "need not show that the above analysis is the only possible construction of the policy, or the best construction of the policy, or even a nominally 'reasonable' construction of the policy."  Dkt. 32, at 8.  Citing *Hardy v. Progressive Ins. Co.*, 67 P.3d 892, 896 (Mont. 2003) and *Liebrand v. National Farmers Union*, 898 P.2d 1220, 1223 (Mont. 1995), Kaufmann argues the only question is whether there is any way at all, reasonable or not, that the policy's exclusionary language can be construed in such as way as to create coverage.  Dkt. 32, at 8.

Kaufmann misreads both *Hardy* and *Liebrand*.  Nothing in either of these cases suggests that it is proper to abandon all common sense and forego a reasonable reading of an insurance policy.   To the contrary, the Montana Supreme

Court has consistently held that an insurance contract is to be read as a whole and construed using common sense. *Hardy*, 67 P.3d at 895-96; *Stutzman*, 945 P.2d at 36.

There can be no dispute that the 2002 Ford Explorer involved in the accident is identified on the policy's declarations page. Dkt. 24-1, at 2. Nor can there be any reasonable dispute that the vehicle was "covered by the bodily injury liability coverage of this policy" in view of the fact that Kaufmann received payment of the bodily injury liability limits in consideration for releasing her liability claim against her husband. Dkt. 33, ¶ 4. Kaufmann has previously stipulated as much, specifically agreeing that "Geico insured the Kaufmann vehicle involved in the single vehicle accident that occurred on October 7, 2005." Dkt. 21, at 4. Reading the policy from the perspective of a reasonable consumer of insurance products, and "applying a common sense interpretation of the terms at issue,"[5] the Kaufmann vehicle clearly qualifies as an "insured auto" under subsection (a).

Because Kaufmann's vehicle falls squarely within subsection (a), the alternative subsection upon which Kaufmann relies simply does not apply. The alternative subsections are separated by the disjunctive "or," which means that

---

[5] *Stutzman*, 945 P.2d at 379.

because the vehicle is insured under subsection (a), the inquiry stops there.  *See*

*e.g. American Family Mut. Ins. Co. v. Livengood*, 970 P.2d 1054, 1057 (Mont.

1998) (explaining that "[w]hen a provision is written in the disjunctive, it is clear

that only one of the separately stated factors must exist").

  That Kaufmann can find a way to read the policy differently, by ignoring the

fact that the vehicle is insured because it is set forth on the declarations page, does

not change things.  The Court "will not create an ambiguity in [the] insurance

contract where none exists."  *Stutzman*, 945 P.2d at 379.   Even when strictly

construing the exclusionary language of the "insured auto" definition against

Geico, the only reasonable way to read that definition is to conclude that the 2002

Ford Explorer was insured under subsection (a), which encompasses vehicles

identified on the declarations page and subject to the policy's bodily injury

liability coverage.  Because the Kaufmann vehicle is an "insured auto," it is

plainly excluded from the definition of an "underinsured auto."  Dkt. 24-1, at 12.

  In an effort to avoid this determination and paint the policy in the most

confusing light possible, Kaufmann points to several provisions that are not

directly at issue here and claims they are either inconsistent or void as against

public policy.  For example, Kaufmann begins by noting that the Montana

Supreme Court has declared that it violates Montana public policy for an insurer to

define an underinsured motor vehicle so as to preclude coverage if the tortfeasor's liability insurance limit exceeds the policy's UIM coverage limits. *Hardy v. Progressive Inc. Co.*, 67 P.2d 892, 897 (Mont. 2003). Although the Geico policy in this case impermissibly purports to do just that, the current dispute has nothing to do with that portion of the definition. Geico does not take issue, nor could it, with the notion that, under *Hardy*, an underinsured motorist is one whose liability coverage is insufficient to compensate the insured for the full extent of her damages. The dispute in this case instead centers on whether the Kaufmann vehicle is excluded from the definition of "underinsured auto" by virtue of its status as an "insured auto." For the reasons set forth above, it is.

Going even farther afield, Kaufmann maintains that several other provisions in the Geico policy are void in Montana, such as the exclusion for injury caused by an uninsured auto driven by a relative, the exclusion for injuries caused by government-owned uninsured vehicles, and the exclusion on uninsured coverage for injuries cause by a hit-and-run vehicle that does not physically contact the insured auto. Dkt. 32, at 5-6. But these provisions are not in any way implicated in this case, and do not obfuscate the plain language of the policy precluding an "insured auto" like the Kaufmann vehicle from also qualifying as an "underinsured auto."

-13-

Finally, Kaufmann argues that because the Geico policy's UIM coverage section is part of its UM coverage section, the insured auto exclusion should be evaluated under the stricter public policy standards applicable to uninsured motorist coverage and any attempt on an insurer's part to limit such statutorily mandated coverage.  For support, Kaufmann relies on *Grier v. Nationwide Mut. Ins. Co.*, 812 P.2d 347, 349 (Mont. 1991) in which the Montana Supreme Court treated UIM coverage as UM coverage where the UIM coverage provisions were subsumed within the policy's UM coverage section,  the insurer did not charge a separate premium for UIM coverage, and the declarations page did not mention UIM coverage.  Viewing the UIM coverage as UM coverage, the *Grier* court held that "the public policy of Montana prohibit[ed] any offset for the amount of coverage carried by the third-party tortfeasor," and invalidated the policy's offset provision on that basis.  *Grier*, 812 P.2d at 249.

Unlike the declarations page at issue in *Grier*, the Geico policy's declarations page specifically references UIM coverage.  Dkt. 24-1, at 2.  In light of that distinction, it not clear whether the Montana Supreme Court would in fact treat Kaufmann's UIM coverage as UM coverage.   Even assuming it would read the UIM coverage provisions as UM coverage, Kaufmann's argument fails.  As it does when defining an "underinsured auto," the Geico policy clearly excludes an

-14-

"insured auto" from the definition of an "uninsured auto."  This exclusion does not

impermissibly defeat otherwise applicable UM coverage for which the insured has

paid a premium, as the offset provision at issue in *Grier* did, but simply and

clearly advises the reasonable reader that an insured vehicle cannot also be

considered an uninsured vehicle and that no UM coverage applies in such cases.

Because the 2002 Ford Explorer involved in the accident falls squarely

within the "insured auto" exception to the definition of an "underinsured auto,"

Kaufmann's UIM coverage claim fails as a matter of law and is subject to

summary dismissal.

### B.    Failure to Provide/Procure Insurance and Misrepresentation

Kaufmann's Second Amended Complaint also asserts the following claims

against Geico: (1) Breach of Contract of Geico as Agent; (2) Failure to Provide

Insurance by Agent; (3) Negligent Failure of Agent to Procure Insurance, and; (4)

Misrepresentation.  Dkt. 44, at 4-5.  Generally speaking, these claims are all

premised on Kaufmann's alternative theory of recovery – that she is entitled to

damages because "Geico misrepresented the extent of UIM coverage it was selling

her in its sales literature and application materials."   Dkt. 29, at 5.

Geico, of course, maintains that it did not misrepresent the terms of the

policy's UIM coverage and argues it is entitled to summary judgment on

Kaufmann's claims for several reasons.  First, Geico maintains that Kaufmann's so-called "documentation and correspondence" claims fail as a matter of law in the face of Mont. Code Ann. § 33-15-302, which provides that the insurance policy itself constitutes the entire contract between the parties.  Second, Geico argues that because it did not act as an agent when selling Kaufmann her policy, Kaufmann's "acting as agent" claims should be summarily dismissed.  Third, Geico takes the position that Kaufmann's claim that it misrepresented the terms of the UIM coverage it was selling her is prohibited under the Montana's Unfair Trade Practices Act ("UTPA"), Mont. Code Ann. §§ 30-14-201 et seq.  Finally, Geico maintains that because the undisputed evidence demonstrates that it did not misrepresent the terms of the policy's UIM coverage,  Kaufmann's misrepresentation claim fails as a matter of law.   Because it is dispositive Kaufmann's "acting as agent" claims, the Court will address Geico's agency argument first.

### 1.    Geico as agent claims

Geico maintains that because it was not acting as an agent when selling Kaufmann her policy, Kaufmann's "acting as agent" claims should be summarily dismissed.  Geico is correct.

As pled, Kaufmann's claims for breach of contract, failure to provide

insurance, and negligent failure to procure insurance are all premised on Geico's actions as an "agent."  Dkt. 44, at 4-5.  Kaufmann's breach of contract claim is titled "Breach of Contract of Geico as Agent," and alleges that Geico "breached its duty to procure the insurance coverage for the Kaufmanns as indicated by its literature and provided to the Plaintiff."  Kaufmann's next claim is similarly titled as "Failure to Provide Insurance by Agent," and asserts that Geico "breached its duty to procure, for the Plaintiffs, the insurance indicated by its literature and as requested by the Plaintiffs."  Dkt. 44, at 4.   Kaufmann likewise asserts a claim for "Negligent Failure of Agent to Procure Insurance," in which she charges that Geico "negligently failed to procure, for the Plaintiffs, the insurance indicated by its literature and as requested by the Plaintiffs."  Dkt. 44, at 5.

Although Kaufmann has expressly premised all three of these claims on Geico's alleged actions as an agent, the undisputed evidence of record shows that Geico was not in fact acting as an agent when it sold Kaufmann the policy.  By statute, an agent is defined as "one who represents another, called the principal, in dealings with third parties."  Mont. Code Ann. § 28-10-101.

As it stands, the record reflects that in December 2004, Kaufmann went online to shop for car insurance and after  comparing the price and coverage offered by several carriers, chose to purchase a policy from Geico.  Dkt. 30, ¶ 15.

-17-

On December 16, 2004, Kaufmann spoke on the telephone with a Geico sales representative after which she forwarded her first premium payment.  Dkt. 30, ¶ 16.   The next day,  Geico sent Kaufmann a fax confirming that it had issued a provisional insurance policy.  Dkt. 30, 17.  Geico also sent Kaufmann the coverage description and option forms giving rise to her misrepresentation claims, and once Kaufmann provided all the necessary information issued a final policy sometime after January 17, 2005.  Dkt. 30, ¶¶ 18-19, 22-24.

Two things can be said based on these facts.  First, that Kaufmann purchased the policy direct from Geico and not through an independent insurance agent or agency.  Second, that Geico was not representing another in its dealings with Kaufmann and was therefore not acting as an agent.

Kaufmann does not dispute that she bought the policy directly from Geico or that Geico cannot be an agent for itself.  Dkt. 29, 13-14.  Kaufmann does, however, reject that notion that Geico can somehow escape liability for its allegedly wrongful sales practices simply by selling her the policy itself rather than through an agent.  Dkt. 29, at 13.   Regardless of whether Geico was acting as an agent, Kaufmann argues she is entitled pursue her claim that Geico misrepresented the terms of the policy it was selling.  Dkt. 29, at 14.

That may well be true, but what Kaufmann fails to address is the fact that, as

pled, her claims for breach of contract, failure to provide insurance, and failure to procure insurance are premised solely on Geico's alleged conduct as an agent. Dkt. 44, at 4-5.  Geico has limited its motion accordingly, taking the position that because it was not acting as an agent when selling the policy, Kaufmann's "acting as agent" claims should be summarily dismissed.

The Court agrees.  Because the undisputed evidence establishes that Geico was not acting as an agent when it sold Kaufmann the policy, there is no factual basis for Kaufmann's claims to the extent they are premised on Geico's alleged conduct as an agent.  This means that Kaufmann's claims for breach of contract, failure to provide insurance, and failure to procure insurance – which are all based exclusively on Geico's alleged conduct as an agent – fail as a matter of law.

This leaves Kaufmann with her misrepresentation claim, in which she alleges that Geico misrepresented the terms of the insurance policy in violation of Mont. Code Ann. § 33-18-201(1)

## 2.  Misrepresentation

Kaufmann's misrepresentation claim simply alleges that Geico "misrepresented to the Plaintiffs the extent of their coverage in violation of M.C.A. § 33-18-201(1)."  Dkt. 44, at 5.  As she explains with more specificity on summary judgment, Kaufmann maintains that  Geico provided her with a

"coverage description" form and an "option" form that misrepresented the scope of UIM coverage she was purchasing and did not reference the policy's various exclusions and limitations.  Kaufmann claims "these documents led her to believe she would be covered for damages caused by any underinsured motorist," regardless of whether or not that underinsured motorist was operating one of the two insured vehicles at the time of the accident.  Dkt. 29, at 5.

        *a.*      *Mont. Code Ann. § 33-15-302*

Geico argues as a threshold matter that this claim should be summarily dismissed based on Mont. Code Ann. § 33-15-302, which provides as follows:

> **Policy must contain entire contract.**  The policy, when issued, shall contain the entire contract between the parties, and neither the insurer or any insurance producer or representative thereof nor any person insured thereunder shall make any agreement as to the insurance which is not plainly expressed in the policy.  This provision shall not be deemed to prohibit the modification of a policy, after issuance, by written rider or endorsement duly issued by the insurer.

In Geico's view, this statute prohibits Kaufmann from claiming that the advertising and application materials she received altered the terms the insurance policy to eliminate the "insured auto" exclusion and expand the scope of UIM coverage.  For support, Geico looks to *Lee v. USAA Cas. Ins. Co.*, 22 P.3d 631, 634 (Mont. 2001), in which a claims adjuster incorrectly advised the injured plaintiff, who was not a named insured on the automobile policy at issue, that she

was entitled to recover UIM benefits.  Relying in part on Mont. Code Ann. § 33-15-202, the Montana Supreme Court rejected the plaintiff's claim that the adjuster's assurance "created" UIM coverage where none would have otherwise existed under the terms of the policy.  *Lee*, 22 P.3d at 639. Analogizing to *Lee*, Geico argues that even if the coverage description and option forms misrepresented the scope of UIM coverage, Kaufmann cannot rely on them to create coverage because the policy "contain[s] the entire contract between the parties."  Mont. Code Ann. § 33-15-302.

Unlike the plaintiff in *Lee*, however, Kaufmann is not attempting to modify the terms of an established insurance contract based on after-the-fact statements made by an adjuster in the course of handling a claim.  Rather, Kaufmann is claiming that Geico misrepresented the terms of the policy and that "she was wrongfully induced to purchase a policy that did not provide the benefits advertised."  Dkt. 29, at 7.

As the Montana Supreme Court has recognized, Mont. Code Ann. § 33-15-302 is "directed to the question of whether the policy can be verbally altered by the insurer's agent."  *Thomas v. Northwestern Nat'l Ins. Co.*, 973 P.2d 804, 811 (Mont. 1998).   The statute does not, however, preclude all tort actions arising out of statements, assurances, or misrepresentations made by an insurer's agent. *See*

-21-

*Thomas*, 973 P.2d at 811; *Lee*, 22 P.3d at 640-41.   As the *Thomas* court explained,

for example, if an insurer's agent fails to disclose a policy change to the insured's

detriment, "certainly such conduct may give rise to a tort action notwithstanding"

Mont. Code Ann. § 33-15-302.  Similarly, Mont. Code Ann. § 33-15-302 does not

preclude Kaufmann from claiming that Geico misrepresented the terms of the

policy and in doing so wrongfully induced her to purchase a policy that did not

provide the UIM benefits advertised.  Restated, Mont. Code Ann. § 33-15-302

does not preclude a claim for fraud in the inducement.  To the extent Kaufmann's

misrepresentation claim asserts just that,  Geico has not shown that it is entitled to

summary judgment based on Mont. Code Ann. § 33-15-302.

### b.  *Applicability of UTPA*

Geico next argues that Kaufmann's misrepresentation claim fails as a matter

of law because the UTPA only provides for a cause of action where an insured

alleges damages arising out of the handling of an insurance claim, and does not

apply to claims alleging misrepresentation concerning the extent of coverage sold.

Geico begins by pointing to Mont. Code Ann. § 33-18-242(3), which

provides as follows:

> An insured who has suffered damages as a result of the handling of an
> insurance claim may bring an action against the insurer for breach of the
> insurance contract, for fraud, or pursuant to this section, but not under any

> other theory or cause of action.  An insured may not bring an action for bad
> faith in connection with the handling of an insurance claim.

As Geico notes, both Montana's state and federal courts have read this statute as

limiting a first-party insured's claims against an insurer for claims handling

practices to breach of the UTPA, breach of contract, or fraud.  *See e.g. Royal*

*Indem. Co. v. Colmore*, 2006 WL 2382465 at *3 (D. Mont. 2006); *Brewington v.*

*Employers Fire Ins. Co.*, 992 P.2d 237, 248 (Mont. 1999).  Citing this line of

cases, Geico argues that Section 242(3) therefore prohibits Kaufmann, as a first-

party insured, from bringing an action for misrepresentation, particularly where

the alleged misrepresentation does not involve the handling of an insurance claim.

Dkt. 23, at 19.

    Kaufmann agrees that her misrepresentation claim does not arise out of

Geico's handling of her insurance claim, and in fact argues that for this reason

Section 242(3) and its limiting language do not apply.  According to Kaufmann,

nothing in Section 242(3) prohibits her from bringing a common law cause of

action involving misrepresentations made in connection with the sale of a policy.

Dkt. 29, at 10.

    On this point, Kaufmann is correct.  Because her misrepresentation claim

has nothing to do with Geico's subsequent handling of her insurance claim,

Section 242(3)'s limiting language simply does not apply.   While Kaufmann

argues that she is thus entitled to bring a common law claim against Geico for

misrepresentation, matters are complicated somewhat by the fact that her Second

Amended Complaint identifies the claim as one for violation of the UTPA - albeit

a different section.  Specifically, Kaufmann alleges that Geico "misrepresented to

the Plaintiffs the extent of their coverage in violation of M.C.A. § 33-18-201(1)."

Dkt. 44, at 5.

        Section 201 sets forth a list of prohibited unfair claim settlement practices,

the first of which is "misrepresent[ing] pertinent facts or insurance policy

provisions relating to coverages at issue...."  Mont. Code. Ann. § 33-18-201(1).

As noted above, however, Geico was not handling Kaufmann's claim when it

allegedly misrepresented the terms of the policy's UIM coverage.

        Geico argues that Section 201(1) applies only to claims settlement practices,

and that Kaufmann's misrepresentation claim is therefore barred.   In *Fillinger v.*

*Northwest Agency, Inc.*, 938 P.2d 1347, 1357 (Mont. 1997), however, the Montana

Supreme Court held that misrepresentations made by an insurance agent in the sale

of a policy constituted trade practices prohibited by Mont. Code Ann. § 33-18-

201(1).   The *Fillinger* court also recognized that when  an individual or insurer

"breaches the obligations imposed by [§ 33-18-201, MCA], the claimant who is

damaged by that breach has a common law cause of action against that individual"

or insurer. *Fillinger v. Northwest Agency, Inc.*, 938 P.2d 1347, 1357 (Mont. 1997)

(quoting *O'Fallon v. Farmers Ins. Exch.*, 859 P.2d 1008, 1015 (Mont. 1993)).

Arguably, *Fillinger* suggests two things. First, that Kaufmann may indeed

bring a claim under Mont. Code Ann. § 33-18-201(1) against Geico for its alleged

misrepresentations during the sale of the policy. Second, that Kaufmann's

misrepresentation claim may be characterized as one at common law, despite its

reference to Section 201 of the UTPA.

As Geico points out, however, the extent to which *Fillinger* is properly cited

for these propositions is not entirely clear. In a decision post-dating *Fillinger*, the

Montana Supreme Court found based on its review of the practices outlawed by §

33-18-201, MCA, that the UTPA only "addresses the relationship between an

insured and an insurance company once a claim has been filed." *Thomas v. N.W.*

*Natl. Ins. Co.*, 973 P.2d 804, 809 (Mont. 1998).[6] Observing that all of the

appellants' tort claims in that case related "to events that occurred prior to the

handling of the claim," the *Thomas* court concluded that "§ 33-18-201, MCA,

simply [did] not address the conduct" at issue. *Thomas*, 973 P.2d at 809. In doing

---

[6] The *Thomas* court's observation is consistent with the title of Mont. Code Ann.
§ 33-18-201, Unfair Claim Settlement Practices Prohibited.

so, however, the court did not discuss or expressly overturn *Fillinger*.[7]

Regardless of whether Kaufmann's misrepresentation claim is characterized as one at common law or as one pursuant to the UTPA, the undisputed evidence demonstrates that Geico did not misrepresent the terms of the policy's UIM coverage and her claim to the contrary thus fails as a matter of law.

　　　c. *No misrepresentation*

Kaufmann's theory is that "Geico misrepresented the extent of UIM coverage it was selling her in its sales literature and application materials." Dkt. 29, at 5. Specifically, she points to the coverage description and option forms Geico sent her before she purchased her final policy, as well certain statements on Geico's website. Kaufmann maintains that these materials misrepresented the scope of UIM coverage she was purchasing, did not reference the policy's various exclusions and limitations, and "led her to believe she would be covered for

---

[7] The question of whether a claim of misrepresentation or fraud in the inducement for the purchase of an insurance policy is one grounded in the common law or the UTPA takes on added significance in light of the Montana Supreme Court's holding in *Lorang v. Fortis Ins. Co.*, 192 P.3d 186 (Mont. 2008). In *Fortis*, the Court effectively rejected the notion that the elements of a common law claim of negligent misrepresentation – such as intent to misrepresent and the claimant's lack of knowledge of the falsity of the representation – should be imported into the UTPA. *Fortis*, 192 P.3d at 211-13. For purposes of the present analysis, the Court need not determine whether Kaufmann's misrepresentation claim must be analyzed under the UTPA or the common law.

damages caused by any underinsured motorist" regardless of whether or not that underinsured motorist was driving one of her own insured vehicles.  Dkt. 29, at 5.

While this may be Kaufmann's theory, she has not explained exactly what it is about these forms that she believes affirmatively misrepresented the scope of the policy's UIM coverage  Dkt. 41, at 13-14.  Presumably, then, it is Kaufmann's position that the forms and website misrepresented the scope and availability of UIM coverage because they did not set forth the policy's various exclusions, including the "insured auto" exclusion.

A claim of misrepresentation under Section 201(1) of the UTPA "is determined by an objective analysis of the substance of the representation at issue, without regard to whether it resulted from an intentional effort to mislead, carelessness, incompetence, or anything else." *Fortis*, 192 P.3d at 212.  The insurer's duty under Section 201(1) "is simply to be truthful in its representations regarding the coverage provisions of an insurance policy." *Fortis*, 192 P.3d at 213.

The coverage description form describes UM and UIM coverage as insurance that:

> Pays damages that you, household relatives and passengers in the insured motor vehicles are legally entitled to recover because of bodily injury or death caused by underinsured, uninsured or hit-and-run motorists.  Pays up

to the first limit for one person and, subject to the first limit for any one person, up to the second limit for all persons injured or killed in one accident.  You may select limits up to and exceeding your Bodily Injury Liability coverage, or you may reject the coverage altogether.

Dkt. 30-3.

Kaufmann apparently maintains that this description led her to believe that this coverage would apply if she was injured by any underinsured motorist, without qualification and even if the motorist was driving her own insured auto.  But the form states at the top, directly under its title, that "[t]he following outline of coverage is for information purposes only.  These descriptions are subject to terms and conditions of the policy used in Montana."  Dkt. 30-3.  The form does not misrepresent that UIM coverage applies in all situations, and instead advises the reader that the descriptions set forth therein are subject to the terms and conditions of the policy.  Dkt. 30-3.

Kaufmann also claims that she was misled by Geico's option form, which contains the following information about UM and UIM coverage:

Uninsured Motorist (UM) coverage includes Underinsured Motorist (UIM) coverage.  These coverages not only protect you and your family against uninsured or hit-and-run motorist, but also protect you and members of your family when involved in an accident with an underinsured motorist.  An uninsured motorist is one who is at fault in an accident but who is not covered by any Bodily Injury Liability Insurance.  An underinsured motorist is one whose limits of Bodily Injury Liability are less than the limits of your Underinsured Motorist coverage.

-28-

We are required by law to include UM and UIM at the minimum limits of $25,000/$50,000 on your policy unless you select higher limits or you reject the coverage completely on this form.  You may not select UM and UIM limits higher than your Bodily Injury Liability Limits.

Dkt. 30-4.

Again, Kaufmann apparently maintains she read this passage as guaranteeing UIM coverage when involved in an accident with any underinsured motorist, even one driving an insured vehicle subject to the policy's bodily injury liability coverage.   But such a reading is not objectively reasonable.  The form specifically states that "[a]n underinsured motorist is one whose limits of Bodily Injury Liability are less than the limits of your Underinsured Motorist coverage." Dkt. 30-4.   The form also explains, however, that the  insured may not select UIM limits that are higher than the Bodily Injury Liability limits.  In other words, stated in the reverse, an insured cannot select Bodily Injury Liability less than the limits of UIM coverage.  This means that, as the option form explains it, it is not possible for a vehicle covered by the bodily injury liability coverage of the policy to also be an underinsured vehicle because that bodily injury liability coverage cannot be less than the limits of the UIM coverage.

Admittedly, the Montana Supreme Court has held that it violates Montana public policy for an insurer to define an underinsured motor vehicle so as to

-29-

preclude coverage if the tortfeasor's liability limits exceed the policy's UIM coverage limits. *Hardy,* 67 P.2d at 897. But the issue here is not whether that definition is valid, but whether Geico misrepresented the scope of the UIM coverage under the policy as it was written. The option form does not misrepresent the terms of the policy, and is in fact consistent with the "insured auto" exclusion.

Finally, Kaufmann argues that materials on Geico's website misrepresented the terms of the policy because they did not provide "any hint that her underinsured motorist coverage would be riddled with exclusions that would defeat or limit coverage in the event she was involved in an accident." Dkt. 40, at 3. The website's description of UM and UIM coverage is very general. It states simply that UM and UIM "coverage will pay for your injuries caused by an uninsured, or in some states, a hit-and-run driver. Given the number of uninsured motorists driving on our highways today, this is very important coverage to have, even in states with no-fault insurance." Dkt. 40-2, at 6. Kaufmann argues that, given the general nature of the information available on the website, it was reasonable for her to rely on the coverage description and option forms she received from Geico. Dkt. 40, at 3-4. As discussed above, however, those forms did not misrepresent the terms of UIM coverage as set forth in the policy. Nor

-30-

does the website's general description of UIM coverage do so.

Rather than focusing on exactly what she believes is misleading, Kaufmann again points to various policy provisions that have either been invalidated by the Montana Supreme Court or that she claims are confusing and ambiguous. Kaufmann argues she had "no duty to read the policy unless under the circumstances it [was] unreasonable not to read it." Dkt. 29, at 15 (quoting *Fillinger*, 938 P.2d at 1351-52). Whether or not it Kaufmann had a duty to read the policy once she received it has nothing to with her current claim, however, which is that Geico misrepresented the terms of the policy in the materials it provided. Kaufmann has not shown that coverage description form, option form, or website materials misrepresented the terms of UIM coverage as set forth in the policy. Absent any evidence that Geico did in fact misrepresent insurance policy provisions relating to coverage, Kaufmann's claim fails as a matter of law.

## IV.    Conclusion

For all of the above reasons,

IT IS ORDERED THAT Geico's motion for summary judgment is GRANTED, and Kaufmann's cross-motion for partial summary judgment is DENIED.

DATED this 1st day of February, 2010

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge